**IT IS ORDERED as set forth below:**

Date: April 17, 2018



_____
Lisa Ritchey Craig
U.S. Bankruptcy Court Judge

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| WC PRIME INVESTORS, LLC AND ) | JOINTLY ADMINISTERED UNDER |
| WORTHINGTON GEORGIA HOLDINGS, ) | CASE NO. 18-52904 |
| LLC ) | |
| ) | |
| DEBTORS. | |

**SECOND INTERIM ORDER ON EMERGENCY MOTIONS
TO AUTHORIZE USE OF CASH COLLATERAL**

On February 21, 2018, WC Prime Investors, LLC ("Debtor WC Prime") and Worthington Georgia Holdings, LLC ("Debtor WGH"; collectively, the "Debtors") filed Emergency Motions (Doc. No. 3 in Case No. 18-52904, and Doc. No. 3 in case No. 18-52907) seeking interim orders to be entered on the use of cash collateral (the "Motions"). The Motions sought the entry of interim

16529403v2

orders authorizing the use of Cash Collateral (as defined below) on a preliminary basis for the period commencing as of the date of the bankruptcy filing through the time of the final hearing on Cash Collateral. After the February 23, 2018 hearing on the Motions, the Court entered two consent orders on the use of Cash Collateral in the Debtors' underlying cases (Doc No. 23 in Case No. 18-52904, and Doc. No. 24 in case No. 18-52907).

Under that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated as of November 22, 2016, recorded on December 2, 2016, in Deed Book 15398, Page 1683, in the Office of the Clerk of the Superior Court of Cobb County, as affected by that certain First Modification of Note and Deed to Secure Debt dated as May 26, 2017, recorded on June 1, 2017, in Deed Book 15447, Page 843, aforesaid records, and that certain Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated as of May 26, 2017, recorded on June 1, 2017, in Deed Book 15447, Page 816, aforesaid records (collectively, the "Security Deeds"), SEHAL III, LLC ("SEHAL") asserts a first-in-priority security interest in and lien against the real property and improvements, as more particularly described in the Security Deeds (the "Real Property"), and the accounts, income, revenue, rents and profits generated by Debtor's business and use of the Real Property (the "Cash Collateral").

On March 29, 2018, following proper notice to parties in interest, the Court held a second hearing on the Motions. Present at the second hearing were Will Geer and Edward Preston for the Debtors, Lindsay Kolba for the U.S. Trustee, Paul Alexander for SEHAL, and Jon David Huffman and Tim Guilmette for Worthington Condominium Association, Inc. (the "COA"). While Debtors and SEHAL came to an agreement prior to the second hearing on the Debtors usage of cash collateral, the COA opposed the relief sought in the Motions. After hearing arguments of counsel, the Court overruled the COA's objections and granted the relief requested in the Motions.

Debtors acknowledge and agree that SEHAL has a right to recoup reasonable attorneys' fees from Debtors in connection with this bankruptcy case, to the extent that SEHAL is over-secured; provided, however, that nothing in this Order shall in any way modify, limit or prejudice SEHAL's rights and remedies under the Bankruptcy Code, applicable loan documents, and applicable non-bankruptcy law, and nothing in the Order shall in any way modify, limit or prejudice the rights and remedies of SEHAL against any non-debtor obligor(s).

SEHAL and Debtors have agreed to the following terms regarding Debtors' use of Cash Collateral on an interim basis, and such terms appear to be in the best interest of the estate and its creditors; accordingly, it is hereby ORDERED that:

1. For as long as Debtors faithfully perform their obligations under this Order, Debtors shall have the right to use the Cash Collateral, subject to the terms of this Order, until 11:59 p.m. on the date of the Third Cash Collateral Hearing or as otherwise extended by order of this Court.

2. Each of the Debtors is authorized to use the Cash Collateral in accordance with the applicable Budget, attached hereto as Exhibit "A" (the line items of which Debtors may modify by no more than ten percent (10%), if reasonable and necessary, without authorization of SEHAL or the Court), and for payment of U.S. Trustee fees or for other matters pursuant to orders entered by this Court after appropriate notice and hearing; provided, however, that any and all payments to the COA shall only be used by the COA to pay for storage unit rental, or for reasonable and necessary costs and expenses directly related to maintaining Debtors' property (e.g. water, sewer, electric, waste disposal, security, pest control, insurance, and repairs).

3. Because SEHAL has an interest in revenue and profits which may constitute cash collateral within the meaning of 11 U.S.C. §§ 363 and 552(b) and then used by Debtors in accordance with this Order, SEHAL shall be and hereby is granted adequate protection as follows:

(a) <u>Lien on Post-Petition Collateral</u>. Pursuant to 11 U.S.C. §§ 361, 363, and 552(b), as partial adequate protection for SEHAL's interest in Cash Collateral, to the extent Debtors use Cash Collateral, SEHAL is granted a valid, attached, choate, enforceable, perfected and continuing security interest in, and liens upon all post-petition assets of Debtors of the same character, type, to the same nature, extent and validity as the liens and encumbrances of SEHAL attached to Debtors' assets pre-petition (the "<u>Post-Petition Collateral</u>"). SEHAL's security interest in, and liens upon, the Post-Petition Collateral shall have the same validity as existed between SEHAL, Debtors and all other creditors or claimants against Debtors' estate on the Petition Date. With respect to the post-petition liens and security interests granted by this Order, SEHAL may, but need not, take such steps as it deems desirable and applicable to comply with such Statutes, and all financing statements and other documents that are filed listing Debtors as borrower and SEHAL as lender shall be deemed to have been filed and the post-petition liens and security interest granted herein shall be deemed to have been perfected on the Petition Date. SEHAL is entitled to adequate protection for any diminution in the value of any of its liens on and/or security interests in any property of Debtors (including, without limitation, the Real Property) resulting from the imposition of the automatic stay or any use, sale, consumption or other disposition of such property

4

(whether pursuant to this or any other order of the Court or the Bankruptcy Code, and the liens on Post-Petition Collateral and the AP Payments (defined below) are granted as partial adequate protection.  The lien on Post-Petition Collateral shall not extend to the proceeds of any avoidance actions received by Debtor or the estate pursuant to sections 544, 547, 548, 549, or 550 of the Bankruptcy Code.

(b)   Payment to SEHAL.  As partial adequate protection for Debtor WC Prime's use of the Cash Collateral, on or before April 10, 2018, and again on or before May 10, 2018, Debtor WC Prime shall deliver to SEHAL payments in the amount of $10,000.00 each month, and then beginning on June 10, 2018, and continuing on the tenth (10th) day of each month thereafter while this Order remains in effect, Debtor WC Prime shall deliver to SEHAL a payment in the amount of $11,500.00 each month (the aforementioned payments referred to as "WC Prime AP Payments"). As partial adequate protection for Debtor WGH's use of the Cash Collateral, on or before April 10, 2018, Debtor WGH shall deliver to SEHAL a payment in the amount of $14,000.00, and then beginning on May 10, 2018, and continuing on the tenth (10th) day of each month thereafter while this Order remains in effect, Debtor WGH shall deliver to SEHAL a payment in the amount of $15,500.00 each month (the aforementioned payments referred to as the "WGH AP Payments,"

5

and together with the WC Prime AP Payment collectively, the "<u>AP Payments</u>").  SEHAL is permitted to apply the AP Payments to accrued interest owed to SEHAL, or otherwise in accordance with the applicable loan documents and applicable law.

(c) <u>Record Access</u>.  Debtors are directed to provide SEHAL with reasonable access to Debtors' books and records, and to deliver such reports as reasonably requested by SEHAL to the extent allowed or provided under the pre-petition loan documents entered into by the parties; Debtors are further directed to provide certificates evidencing insurance coverage including, without limitation, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which Debtors are engaged, and as is required under the Security Deeds naming SEHAL as loss payee and an additional insured with respect to property owned by Debtors, to the extent provided under the pre-petition loan documents.  Debtors shall provide SEHAL with proof of all such insurance coverage, as well as prompt notification of any change in such coverage which may hereafter occur.

(d) <u>Reporting</u>.  Commencing on April 10, 2018, and continuing on the tenth (10th) day of each month thereafter while this Order remains in effect, Debtor shall deliver the following written reports to SEHAL:  (i) a report ("<u>Budget Report</u>") of actual income and actual

6

expenses with respect to those categories listed in the Budget, compared to the projected income and expenses (and in such detail that SEHAL may identify the source(s) and amount of income, and type and amount of expenses), covering the prior month; (ii) an accounts receivable aging report, covering the prior month; (iii) a post-petition, accounts payable aging report, covering the prior month; and (iv) true and correct copies of bank statements for any and all bank accounts used by Debtors, reflecting balances and transactions covering the prior month. The initial Budget Report shall cover from and including February 21, 2018 through and including March 31, 2018. Further, commencing on April 24, 2018, and continuing on the twenty-fourth (24th) day of each month thereafter while this Order remains in effect, Debtors shall deliver to SEHAL copies of bank account transaction reports for all bank accounts used by Debtors, reflecting balances and transactions as of the date such reports are delivered. All reports under this section shall be delivered to SEHAL via email to: mfallaize@satillacapital.com; and Paul.Alexander@millermartin.com .

(e) <u>Revenue Accounting</u>. Debtors shall deposit and account for all monies and revenue generated from the operations of their businesses. Subject to payment of the authorized expenses set forth in Paragraph 2 of this Order, said monies and revenue shall be

deposited into Debtors' DIP operating or tax accounts (or such other bank account(s) as may be approved by the Court) and shall not be used for any other purpose.

(f) <u>Collateral Inspection</u>. SEHAL is entitled to review and inspect its collateral at any time upon written notice to Debtors of the date, location and time of the planned inspection and each of the Debtors is directed to cooperate with same.

(g) <u>Events of Default</u>. Each of the following shall constitute an "Event of Default" under this Order, as to either or both of the Debtors, as is applicable:

i. Either of the Debtors (1) fails to timely deliver to SEHAL any interim adequate protection payment required under this Order, or (2) fails to timely deliver to SEHAL any report as required under this Order; provided that written notice of such default is first sent by SEHAL via email to counsel (to: wgeer@wiggamgeer.com) for either or both Debtors, as applicable, and via First Class U.S. Mail to either or both Debtors, as applicable, and the Debtors fail to cure such default within ten (10) calendar days of the date such notice is sent;

ii. Conversion of this Chapter 11 case or the other case being jointly administered herewith to a case under Chapter 7;

iii. Appointment of a Chapter 11 trustee or examiner; or

iv. Either or both of the Debtors, as applicable, make any payment other than as authorized to be paid pursuant to this Order.

8

      v. An Event of Default shall be exclusive to each debtor in these jointly administered cases, and occurrences regarding only one of the Debtors shall not be deemed in any way to be cross-defaulted to the other debtor in these cases. In other words, if the actions or omissions of only one debtor result in an Event of Default, such Event of Default shall not affect the other non-defaulting debtor's rights or authority to use Cash Collateral under this Order.

      vi. Upon the occurrence of an Event of Default, the authority of either or both of the Debtors, as is applicable, to use Cash Collateral shall immediately terminate, without further notice or hearing. Further, upon the occurrence of an Event of Default, SEHAL may, but is not required to, submit an Affidavit of Event of Default, and the Court may enter an order terminating the use of Cash Collateral by either or both of the Debtors, as is applicable, without further notice or hearing.

4. This Order is without prejudice to any of SEHAL's rights and remedies, including but not limited to its right to dispute at any time Debtors' use of the Cash Collateral, seek relief from the stay or dismissal of this Case, and contest the nature, extent, validity or priority of any lien or security interest, and the entry of this Order is not to be interpreted as an agreement by SEHAL to support or accept the filing of Debtors' bankruptcy petition, any plan of reorganization or disposal of assets under Section 363 of the Bankruptcy Code, or any other proposed treatment of SEHAL's asserted claim(s).

5. This Order is entered without prejudice to the rights of other creditors to seek additional adequate protection or other relief available under the Bankruptcy Code, other applicable law or applicable loan documents.

6. This Order is also entered without prejudice to the claims, rights, and actions that: (A) Debtors may have to challenge the nature, validity, or extent of the liens, security interests or debts asserted by SEHAL; and (B) SEHAL may assert in any action by Debtors to challenge the nature, validity, or extent of the liens, security interests or debts it may assert.

7. Notwithstanding anything herein to the contrary, the lien on Post-Petition Collateral granted to SEHAL hereunder in connection with the use of any of the assets of Debtors and cash collateral shall be subject and junior to the fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930.

8. This Order is without prejudice to the rights of creditors, any creditor committee, and any subsequent trustee.

9. Notwithstanding anything to the contrary within Bankruptcy Rule 4001(b)(2) or any other rule of similar import, this Order shall be effective immediately upon its entry.

10. This Order shall constitute an interim order. The Court shall conduct a further hearing on the Motion (the "<u>Third Cash Collateral Hearing</u>") **on the 7th day of June 2018 at 10:15 a.m. in Courtroom 1204, U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia** at which time the Court will consider the entry of a further order authorizing Debtor to use cash collateral and may schedule a hearing to consider a final order authorizing Debtor to use cash collateral. Your rights may be affected by the Court's ruling on the Motion and related papers. You should read this Order and the Motion carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in the Motion or if you want the Court to

consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing.  The address of the Clerk's Office is:  Clerk of the United States Bankruptcy Court for the Northern District of Georgia at Room 1340, Richard Russell Federal Building, 75 Ted Turner Drive, Atlanta, Georgia 30303. You must also serve a copy of your response so that such response is received no later than **June 5, 2018,** on the following:  (i) Will B. Geer, Esq., Wiggam & Geer, LLC, 333 Sandy Springs Circle, NE, Suite 225, Atlanta, Georgia 30328, counsel for the Debtor; (ii) Paul Alexander, Esq., Miller & Martin, PLLC, 1170 Peachtree St NW Atlanta, GA 30309 as counsel for SEHAL; and (iii) the  Office of the United States Trustee, 362 Richard Russell Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303.

### [End of Order]

**Prepared and presented by:**

  /s/ Will Geer
Will B. Geer
Georgia Bar No. 940493
Wiggam & Geer, LLC
33 Sandy Springs Circle, NE
Suite 225
Atlanta, Georgia 30328
(770) 587-8740 Telephone
(404) 287-2767 Facsimile
wgeer@wiggamgeer.com
Counsel for Debtors

**Consented to by:**

      (w/ express permission by Will Geer)
Paul M. Alexander, Esq.
Georgia Bar No. 009003
(by Will B. Geer, II w/express permission)

11

Miller & Martin, PLLC
1180 West Peachtree St NW
Suite 2100
Atlanta, GA 30309
Attorneys for SEHAL III, LLC

Distribution List:

Paul M. Alexander, Esq., Miller & Martin PLLC, 1180 West Peachtree St NW, Suite 2100, Atlanta, GA 30309

Will B. Geer, Esq., Wiggam & Geer, LLC, 333 Sandy Springs Circle, NE, Suite 225, Atlanta, Georgia 30328

Jon David W. Huffman, Esq., Poole Huffman, LLC, 315 W. Ponce de Leon Ave., Suite 344, Decatur, GA 30030

Office of the United States Trustee, 362 Richard Russell Building, 75 Ted Turner Drive, SW, Atlanta, GA 30303

WC Prime Investors, LLC, 1960 Spectrum Circle, Unit 100, Marietta, GA 30067

Worthington Georgia Holdings, LLC, 1960 Spectrum Circle, Unit 100, Marietta, GA 30067

EXHIBIT "A" FOLLOWS

**Budget Period** April - June 2018
**Company Name:** WC Prime Investors LLC
**Fiscal Year** 2018

| Period | | APR | | MAY | | JUN | |
|---|---|---|---|---|---|---|---|
| **Income** | | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL |
| 4010 | Rent | $ 23,629 | | $ 27,150.00 | | $ 34,750.00 | |
| 4030 | Rent from Subsidy / Third Party | | | | | | |
| 4040 | Other Income | | | | | | |
| **Totals** | | $ 23,629.00 | $ - | $ 27,150.00 | $ - | $ 34,750.00 | $ - |
| **Expense** | | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL |
| 5130 | COA Dues | $ 5,400.00 | | $ 5,977.36 | | $ 5,977.36 | |
| 5175 | Bank Charges | | | | | | |
| 5600 | CR Card Fees | | | | | | |
| 5610 | Management Fees | $ 3,562.90 | | $ 3,915.00 | | $ 4,675.00 | |
| 5620 | Accounting Services | | | | | | |
| 5630 | Legal Services | | | | | | |
| 5640 | Other Professional Services | | | | | | |
| 7000 | Maintenance & Repairs | $ 1,000.00 | | $ 3,500.00 | | $ 8,500.00 | |
| 7510 | Utilities | | | | | | |
| 7620 | Contract - Pest Control | $ 252.00 | | $ 252.00 | | $ 252.00 | |
| 8010 | Ad Valorem (Property) Taxes | $ 2,352.00 | | $ 2,352.00 | | $ 2,352.00 | |
| 8080 | Mortgage Interest | $ 10,000.00 | | $ 10,000.00 | | $ 11,500.00 | |
| 8110 | Hazard & Liability Insurance | $ 676.86 | | $ 676.86 | | $ 676.86 | |
| 8210 | Other Expense - US TRUSTEE | $ 325.00 | | $ 325.00 | | $ 325.00 | |
| **Totals** | | $ 23,568.76 | $ - | $ 26,998.22 | $ - | $ 34,258.22 | $ - |
| **Net Operating Income** | | $ 60.24 | $ - | $ 151.78 | $ - | $ 491.78 | $ - |

**Budget Period** April - June 2018
**Company Name:** Worthington Georgia Holdings LLC
**Fiscal Year** 2018

| Period | | APR | | MAY | | JUN | |
|---|---|---|---|---|---|---|---|
| **Income** | | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL |
| 4010 | Rent | $ 45,739.00 | | $ 47,000.00 | | $ 48,420.42 | |
| 4030 | Rent from Subsidy / Third Party | | | | | | |
| Totals | | $ 45,739.00 | $ - | $ 47,000.00 | $ - | $ 48,420.42 | $ - |
| **Expense** | | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL |
| 5130 | COA Dues | $ 7,404.90 | | $ 7,404.90 | | $ 7,404.90 | |
| 5175 | Bank Charges | | | | | | |
| 5600 | CR Card Fees | | | | | | |
| 5610 | Management Fees | $ 5,773.90 | | $ 5,900.00 | | $ 6,042.04 | |
| 5620 | Accounting Services | | | | | | |
| 5630 | Legal Services | | | | | | |
| 5640 | Other Professional Services | | | | | | |
| | Lockers | $ 400.00 | | $ 400.00 | | $ 400.00 | |
| 7000 | Maintenance & Repairs | $ 8,800.00 | | $ 8,800.00 | | $ 8,800.00 | |
| 7510 | Utilities | | | | | | |
| 7620 | Contract - Pest Control | $ 252.00 | | $ 252.00 | | $ 252.00 | |
| 8010 | Ad Valorem (Property) Taxes | $ 2,624.75 | | $ 2,624.75 | | $ 2,624.75 | |
| 8080 | Mortgage Interest | $ 14,000.00 | | $ 15,500.00 | | $ 15,500.00 | |
| 8110 | Hazard & Liability Insurance | $ 676.86 | | $ 676.86 | | $ 676.86 | |
| 8200 | Manager Salary | $ 5,000.00 | | $ 5,000.00 | | $ 5,000.00 | |
| 8210 | Other Expense / US Trustee | $ 325.00 | | $ 325.00 | | $ 325.00 | |
| Totals | | $ 45,257.41 | $ - | $ 46,883.51 | $ - | $ 47,025.55 | $ - |
| **Net Operating Income** | | $ 481.59 | $ - | $ 116.49 | $ - | $ 1,394.87 | $ - |